# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

ANITA K. FRYE                                                                     PLAINTIFF

v.                                     5:08CV00225 WRW/JTR

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                        DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

This recommended disposition has been submitted to United States District Judge William R. Wilson. The parties may file specific objections to these findings and recommendations and must provide the factual or legal basis for each objection. The objections must be filed with the Clerk no later than eleven (11) days from the date of the findings and recommendations. A copy must be served on the opposing party. The District Judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

## RECOMMENDED DISPOSITION

Plaintiff, Anita K. Frye, has appealed the final decision of the Commissioner of the Social Security Administration denying her claim for Disability Insurance Benefits ("DIB"). Both parties have filed Appeal Briefs (docket entries #12 and #13), and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[1]

---

[1] *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

"substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

In her Disability Report,[2] Plaintiff alleged that she was disabled due to depression, chest pain, inability to breathe, voice loss, headaches, back pain, and anxiety attacks. (Tr. 110-111.) After conducting an administrative hearing, during which Plaintiff and a vocational expert testified, the Administrative Law Judge ("ALJ") concluded that Plaintiff had not been under a disability, within the meaning of the Social Security Act, at any time through February 29, 2008, the date of his decision. (Tr. 19.) On July 28, 2008, the Appeals Council received and considered additional evidence and then denied Plaintiff's request for a review of the ALJ's decision; thereby making it the final decision of the Commissioner. (Tr. 4-6.) Plaintiff then filed her Complaint initiating this appeal. (Docket entry #2.)

Plaintiff was 49 years old at the time of the administrative hearing. (Tr. 357.) She is a college graduate, with past relevant work as a public school teacher. (Tr. 115, 257, 12, 87-88, 111-12, 126.)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. Step 1 involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i) (2006). If the claimant is, benefits are denied, regardless of medical condition, age, education, or work experience. *Id.* at § 404.1520(b).

---

[2]"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Step 2 involves a determination, based solely on the medical evidence, of whether the claimant has an impairment or combination of impairments which significantly limits claimant's ability to perform basic work activities, a "severe" impairment. *Id.*, § 404.1520(a)(4)(ii). If not, benefits are denied. *Id.*

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(a)(4)(iii).[3] If so, and the duration requirement is met, benefits are awarded. *Id.*

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity, despite the impairment(s), to perform the physical and mental demands of past relevant work. *Id.*, § 404.1520(a)(4)(iv). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, § 404.1520(a)(4)(v). If so, benefits are denied; if not, benefits are awarded. *Id.*

The ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since her alleged onset date[4] (Tr. 13); (2) had a "severe" impairment (*id.*); (3) did not have an impairment or combination of impairments that met or equaled a Listing (*id.*); (4) was not fully credible in her subjective allegations (Tr. 17); (5) retained the RFC for light work which did not require more than superficial contact with co-workers or more than occasional dealings with the public (*id.*); (6) was unable to perform her past relevant work (Tr. 18); but (7) was able to perform other jobs which existed in significant numbers in the national economy, including work as an office helper. *Id.* Thus, the ALJ concluded that Plaintiff was not disabled. *Id.*

At step 5, the ALJ utilized the testimony of a vocational expert. *Id.* In finding that Plaintiff

---

[3] If the claimant's impairments do not meet or equal a Listing, then the ALJ must determine the claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence. *Id.*, § 404.1520(a)(4). This RFC is then used by the ALJ in his analysis at Steps 4 or 5. *Id.*

[4] In her application for DIB, Plaintiff originally alleged an onset date of September 22, 2004. (Tr. 54.) During the administrative hearing, she amended her alleged onset date to December 5, 2005. (Tr. 258.)

could perform other work, the ALJ correctly noted that, once Plaintiff was determined to be unable to perform her past relevant work, the burden shifted to the Commissioner to show a significant number of jobs within the economy that she could perform, given her RFC, age, education and past work. *Id.*

In her Appeal Brief (docket entry #12), Plaintiff argues that the ALJ erred: (1) in determining that there were other jobs that existed in significant numbers in the national economy which she could perform; (2) in asking the vocational expert a flawed hypothetical question; and (3) in finding that she could perform light work. Because all three of Plaintiff's arguments turn on the ALJ's RFC determination, the Court will analyze these arguments together.

According to Plaintiff, substantial evidence does not support the ALJ's determination that she could perform other work. Specifically, Plaintiff contends this determination is in conflict with the opinions of some of her treating medical personnel. (*Pltff.'s App. Br.* at 10-14.)

One such opinion was offered by Michael Stevens, a chiropractor, in an "Attending Physician's Statement" to U.S. Able Life, dated March 12, 2007. According to Dr. Stevens, Plaintiff should "avoid bending, lifting over ten pounds, prolonged sitting, or standing in one position." (Tr. 329.) Dr. Stevens saw Plaintiff for less than two months in early 2007, after she had been involved in an automobile accident. (Tr. 186-91.) Importantly, his treatment notes do not support the restrictions set forth in his March 12, 2007 Statement. *Id.* Additionally, a chiropractor is not among the "acceptable sources" of medical evidence upon which the ALJ may rely to establish a medically determinable impairment. 20 C.F.R. § 404.1513(a) (2007); *Ingram v. Chater*, 107 F.3d 598, 603 n.4 (8th Cir. 1997); *Walker v. Shalala*, 993 F.2d 630, 632, n.2 (8th Cir. 1993); *Chronkite v. Sullivan*, 935 F.2d 133, 134 (8th Cir. 1991).

Plaintiff also relies on the opinion of Bessie Lancelin, a licensed social worker, who completed a Mental Capacities Evaluation Form dated August 23, 2006. (Tr. 201-03.) Ms. Lancelin worked at Southeast Arkansas Behavioral Healthcare System, Inc., where she saw Plaintiff over a period of years. On the Mental Capacities Evaluation Form, Ms. Lancelin noted that, along Axis I,

Plaintiff suffered from a major depressive disorder; anxiety disorder; and alcohol dependency. (Tr. 201.) However, based on her evaluation of Plaintiff's psychiatric status, she found Plaintiff to have only mild to moderate limitations in her abilities. (Tr. 201-202.) Ms. Lancelin concluded her notes by stating: "We are working on assisting her [Plaintiff] with getting a job hopefully within the next 6 months." (Tr. 203.)

On January 2, 2007, Ms. Lancelin again saw Plaintiff. (Tr. 199.) Her therapy notes reflect the following:

> Anita kept her scheduled appointment with me this morning. She comes in at this time reporting that she is doing poorly. She relates that she is depressed all of the time. She relates that she is not attending church. She is not attending support group meetings. She relates the only thing she has been doing is taking her medication and she relates that it works some days, some days it does not. I reiterated to her that in order to work toward her goal, which is to alleviate her depressed mood and return to her previous level of effective functioning that she must follow the recommendations of total abstinence from alcohol and other mood altering drugs that are not prescribed, attending support group meetings, involving herself with community activities that were helpful for her in the past, while verbalizing her feelings. She agrees that these things will work but she relates "I'm just not motivated to do them." She relates "I just simply don't want to." She does relate that she will start by coming in to see me on a regular basis, that she will make a sincere effort to do at least one of the things I have asked her to do between now and her next appointment. The patient has no drive and no will to change. . . . . Prognosis is guarded.

*Id.*

However, Ms. Lancelin's therapy notes for March and April of 2007 reflect that Plaintiff was doing better. (Tr. 194-96.) By May, 2007, Plaintiff reported to Mr. Lancelin that things were "great." (Tr. 331.) Plaintiff had been involved in her class reunion and gave a speech at the banquet. *Id.* Ms. Lancelin talked to her about looking for a job, but Plaintiff replied: "I'm not ready yet." *Id.*

On July 27, 2007, Dr. Greg Wooten, a psychiatrist with the Southeast Arkansas Behavioral Healthcare System, Inc., saw Plaintiff for a follow-up on her diagnosis of "Major Depression Disorder, Anxiety Disorder NOS and Alcohol Dependency, in remission." (Tr. 332.) According to Dr. Wooten's notes, Plaintiff reported that taking 20 mg of Prozac in the morning and 300 mg of Wellbutin XL per day was "working well." Dr. Wooten's plan was for Plaintiff to continue her medications and return to the clinic for a follow-up in three months. *Id.*

On the morning of October 22, 2007, Plaintiff was seen by Dr. Kathryn Bowman, another psychiatrist with Southeast Arkansas Behavioral Healthcare System, Inc. (Tr. 333-334.) The reason for this visit was that Plaintiff had run out of her medication. Dr. Bowman described Plaintiff's mental status as follows:

> Her affect was full and congruent. She denied any homicidal or suicidal ideation, intent, or plan. Thought processes are logical and goal directed. No evidence of psychosis, cognitive impairment or anxiety.

(*Id.*) While Plaintiff's mental status seemed to be fine, she complained of "major headaches," not sleeping well, leg and foot pain, loss of appetite, "constant pain daily," and "vomiting almost on a daily basis for three months . . . ." *Id.* She also told Dr. Bowman that she had "no job, no income, and no insurance." Dr. Bowman's "Assessment" of Plaintiff was as follows:

> The patient is not endorsing any neurovegitative signs or symptoms of depression at this time or anxiety. I feel she is endorsing symptoms of fibromyalgia.

*Id.* Dr. Bowman concluded that "no medications at this time are warranted" and suggested that Plaintiff pursue the possibility of chronic fatigue fibromyalgia with an appropriate specialist.

Immediately after her appointment with Dr. Bowman, Plaintiff had a thirty-minute individual therapy session with Ms. Lancelin. Plaintiff told Ms. Lancelin she had not been to the clinic for months because "she is doing so well." Plaintiff told Ms. Lancelin that, earlier that morning, Dr. Bowman saw her and told her "she thought she was doing great, to the point that she did not prescribe any medication for her." Finally, she told Ms. Lancelin that she believed that: (1) she had achieved her goal of returning to her previous level of effective functioning; (2) she denied feeling "depressed, anxious, nervous, homicidal, or suicidal"; and (3) "her remaining issues are related to her physical pain." (Tr. 335.)

Thus, viewed in its proper longitudinal context, Ms. Lancelin's August 23, 2006 Mental Capacities Evaluation Form provides little, if any, support for her argument that the ALJ erred in determining her RFC. Additionally, because Ms. Lancelin is a social worker, she is not among the "acceptable sources" of medical evidence upon which the ALJ may rely. 20 C.F.R. § 404.1513(a) (2007).

Plaintiff also cites the opinion of Tamer Alsebai, M.D., as being in conflict with the ALJ's RFC determination. (*Pltff.'s App. Br.* at 13.) On a one-page insurance company form, Dr. Alsebai checked boxes indicating that Plaintiff was not capable of any work and was unable to engage in stress situations. (Tr. 352.) He listed her as being limited in her "heavy lifting and long standing." *Id.* The form is undated, although it was faxed to the insurance company on May 5, 2008. *Id.* The doctor indicated that he saw Plaintiff January 30, 2008, through March 12, 2008. No follow-up was scheduled. *Id.*

Because he first saw Plaintiff *after* the January 17, 2008 administration hearing, the form Dr. Alsebai completed was not submitted to the ALJ, but only to the Appeals Council. (Tr. 3.) Dr. Alsebai had not seen Plaintiff long enough to be considered a treating physician. *See Strongsom v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (ALJ should give more weight to opinion of doctors who have treated a claimant regularly over period of months or years because they have longitudinal picture of impairment). Finally, Dr. Alsebai's conclusions are unsupported by any treatment records.[5] Under these circumstances, the Appeals Council was free to assign little, if any, weight to Dr. Alsebai's opinion that Plaintiff was not able to perform any work.

Thus, the Court concludes that substantial evidence supports the ALJ's determinations that Plaintiff: (1) could perform light work; and (2) could perform other jobs which existed in significant numbers in the national economy.

Plaintiff also argues that the ALJ's hypothetical question to the vocational expert was flawed because it did not incorporate the restrictions of her chiropractor. The Court concludes that this argument is without merit. Substantial evidence supported the ALJ's inclusion of certain

---

[5] *Supportability*. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we give that opinion. . . . .
20 C.F.R. § 404.1527(d)(3) (2007).

impairments and his exclusion of others. *See Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) (hypothetical may omit evidence not substantially supported by record as a whole); *Rappoport v. Sullivan*, 942 F.2d 1320, 1323 (8th Cir. 1991) (hypothetical question need only include impairments accepted by ALJ as true).

One other point raised by Plaintiff bears mentioning. In her Appeal Brief, she states the following:

> The Eighth Circuit Court of Appeals held in *Clark* [*v. Chater*, 75 F.3d 414 (8th Cir. 1996)] that "it was powerless to decide how an ALJ would have weighed the new evidence submitted to the Appeals Council had it existed at the time of the decision." *Bergman v. Apfel*, 207 F.3d 1065 (8th Cir. 2000); *Cunningham v. Apfel*, 222 F.3d at 496 (8th Cir. 2000). Therefore, this court is likewise powerless to assess this evidence.

(*Pltff.'s App. Br.* at 16.) The quoted language from *Clark* simply does *not* appear anywhere in that decision. Furthermore, *Clark* did not involve any new evidence being submitted to the Appeals Council.

Although there was new evidence submitted to the Appeals Council in both *Bergman* and *Cunningham*, in neither case did the Eighth Circuit indicate it was "powerless" to decide how an ALJ would have weighed the new evidence. In fact, in *Bergmann*, the Court explicitly explained how such new evidence should be evaluated:

> In cases involving the submission of supplemental evidence subsequent to the ALJ's decision, the record includes that evidence submitted after the hearing and considered by the Appeals Council. *See Jenkins v. Apfel*, 196 F.3d 922, 924 (8th Cir.1999) (citing *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir.1994)). Thus, in situations such as the present, this court's role is to determine whether the ALJ's decision "is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made." *Riley*, 18 F.3d at 622. In practice, this requires this court to decide how the ALJ would have weighed the new evidence had it existed at the initial hearing. *See id.* As we have oft noted, "this [is] a peculiar task for a reviewing court." *Id.* Critically, however, this court may not reverse the decision of the ALJ merely because substantial evidence may allow for a contrary decision. *See Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir.1993).

207 F.3d at 1068. Similarly, in *Cunningham*, the Court held the following:

> We first determine the effect of the evidence submitted to the Appeals Council. The regulations provide that the Appeals Council must evaluate the entire record, including any new and material evidence that relates to the period before the date of the ALJ's decision. *See* 20 C.F.R. § 404.970(b). The newly submitted

>   evidence thus becomes part of the "administrative record," even though the evidence
>   was not originally included in the ALJ's record. *See Nelson v. Sullivan*, 966 F.2d
>   363, 366 (8th Cir.1992). If the Appeals Council finds that the ALJ's actions,
>   findings, or conclusions are contrary to the weight of the evidence, including the new
>   evidence, it will review the case. *See* 20 C.F.R. § 404.970(b). Here, the Appeals
>   Council denied review, finding that the new evidence was either not material or did
>   not detract from the ALJ's conclusion. In these circumstances, we do not evaluate
>   the Appeals Council's decision to deny review, but rather we determine whether the
>   record as a whole, including the new evidence, supports the ALJ's determination.
>   *See Nelson*, 966 F.2d at 366.

222 F.3d at 500.[6]

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992). The Court has reviewed the entire record, including the Appeal Briefs, the ALJ's decision, the transcript of the hearing, the medical and other evidence. The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case.

---

[6]In *Nelson*, which is cited in *Cunningham*, the Eighth Circuit again addressed how lower courts should consider "new and material evidence" submitted to the Appeals Council:

>   When new and material evidence is submitted to the Appeals Council,
>
>   >   [t]he Appeals Council shall evaluate the entire record including the
>   >   new and material evidence submitted if it relates to the period on or
>   >   before the date of the administrative law judge hearing decision. It
>   >   will then review the case if it finds that the administrative law judge's
>   >   action, findings, or conclusion is contrary to the weight of the
>   >   evidence currently of record.
>
>   20 C.F.R. § 404.970(b). The newly submitted evidence is to become part of what we
>   will loosely describe here as the "administrative record," even though the evidence
>   was not originally included in the ALJ's record. *Browning v. Sullivan*, 958 F.2d 817,
>   823 n. 4 (8th Cir.1992). If the Appeals Council does not consider the new evidence,
>   a reviewing court may remand the case to the Appeals Council if the evidence is new
>   and material. *See Williams v. Sullivan*, 905 F.2d 214, 217 (8th Cir.1990). If, as here,
>   the Appeals Council considers the new evidence but declines to review the case, we
>   review the ALJ's decision and determine whether there is substantial evidence in the
>   administrative record, which now includes the new evidence, to support the ALJ's
>   decision. *Browning*, 958 F.2d at 823.

*Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992)(footnote omitted).

*Richardson v. Perales*, 402 U.S. at 401; *see also, Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE RECOMMENDED that the final decision of the Commissioner be affirmed and Plaintiff's Complaint be dismissed, with prejudice.

DATED this 11th day of June, 2009.

_____
UNITED STATES MAGISTRATE JUDGE